1998 ME 107

**STATE of Maine**

v.

**Floyd YOUNG, Jr.**

Supreme Judicial Court of Maine.

Argued Nov. 13, 1997.

Decided May 13, 1998.

Geoffrey Rushlau, District Attorney (orally), Rockland, for State.

Jonathan C. Hull (orally), Damariscotta, for defendant.

Before ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶ 1] Floyd Young, Jr. appeals from the judgment entered in the Superior Court (Knox County, *Kravchuk, J.*) following a jury verdict finding him guilty of theft by deception in violation of 17–A M.R.S.A. § 354 (1983).[1] Young argues that there was insufficient evidence for the jury to find that he failed to disclose the existence of a mortgage on property that he sold to the victims, Daniel and Kristie Bourkas. He also contends that reliance by the Bourkases on his alleged nondisclosure of the mortgage is an essential element of the crime of theft by deception, and that there was insufficient evidence for the jury to find such reliance. We affirm the judgment.

I.

[¶ 2] In December 1994 Floyd Young, Jr. was indicted for theft by deception in violation of 17–A M.R.S.A. § 354 for intentionally

---

1. 17–A M.R.S.A. § 354 provides in pertinent part:

1. A person is guilty of theft if he obtains or exercises control over property of another as a result of deception and with an intention to deprive him thereof.
2. For the purposes of this section, deception occurs when a person intentionally:
  . . .

D. Fails to disclose a known lien, adverse claim or other legal impediment to the enjoyment of property which he transfers or encumbers in consideration for the property obtained, whether such impediment is or is not valid, or is or is not a matter of official record.
3. It is no defense to a prosecution under this section that . . . the person deceived acted unreasonably in relying on the deception.

failing to disclose a known encumbrance with the intent to deprive another of his property. Based on the evidence offered at Young's trial, the jury could have found the following facts.

[¶ 3] Young owned a 47–acre parcel of land in Warren, which had been carved into several smaller lots during the 1980s and 1990s, including a lot denoted "Parcel # 3" and a lot denoted the "unnumbered parcel." In 1991 Daniel and Kristie Bourkas purchased the unnumbered parcel from Young and built a house on it.

[¶ 4] In 1992 David Aho, an unrelated third party to this prosecution, became interested in purchasing Young's remaining property. Aho retained the services of attorney Elizabeth Biddle Jennings, who performed a title search of the property. Attorney Jennings' title search revealed the existence of a mortgage on Parcel # 3. She made photocopies of the mortgage for her files, but failed to list the mortgage on her "summary sheet" of the title search. The sale to Aho was never consummated.

[¶ 5] In 1993 the Bourkases became interested in purchasing Parcel # 3 from Young. Young told Daniel Bourkas that Parcel # 3 was encumbered by a mortgage, and suggested that Bourkas try to assume the mortgage. Bourkas was unable to assume the mortgage, and instead arranged for private financing. To assist in the purchase of Parcel # 3, the Bourkases retained the services of attorney Jennings, who had performed a title search on the lot for David Aho in 1992. Jennings updated the title search she had performed for Aho, and found no transactions affecting Parcel # 3 since her original search. Because she had previously failed to list the Parcel # 3 mortgage on her summary sheet, however, Jennings mistakenly believed that the lot was unencumbered.

[¶ 6] After receiving a closing statement prepared by Jennings about a week before the closing date that did not reflect any existing encumbrances on the lot, Susan Thiem, Young's attorney, asked Jennings whether there was a mortgage on Parcel # 3. Jennings responded that according to her records there was no mortgage. Shortly before the closing, Young told Daniel Bourkas that he (Young) "had gone to the bank and they said that there was no mortgage" on Parcel # 3.

[¶ 7] The Bourkases, Young, and their respective attorneys attended the closing in February 1993. At the closing, attorney Thiem expressed surprise that there was no mortgage, and attorney Jennings assured her that it was true. Young remained silent. The Bourkases gave Young a $26,000 check,[2] and Young gave the Bourkases a warranty deed with no reference to a mortgage. Several weeks after the transaction, Jennings learned of the undischarged mortgage and demanded that Young return the proceeds he received at the closing, but Young had already spent most of the money.

[¶ 8] In August 1996 the court entered a judgment on a jury verdict convicting Young of theft by deception in violation of 17–A M.R.S.A. § 354. This appeal followed.

## II.

[¶ 9] Young first argues that there was insufficient evidence for the jury to find that he "failed to disclose" the existence of an encumbrance on Parcel # 3, within the meaning of 17–A M.R.S.A. § 354(2)(D).[3] He contends that his duty to disclose the existence of the mortgage pursuant to section 354 was satisfied by his express disclosure of the existence of the mortgage to Daniel Bourkas several months before the sale; by the Bourkases' constructive knowledge of the mortgage from other sources, including the registry of deeds; and by attorney Jennings' previous discovery of the mortgage in 1992 during her title search for David Aho. In examining the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether a trier of fact rationally could find beyond a reasonable

---

2. Young also took back a $4,000 promissory note secured by a mortgage on Parcel # 3.

3. On appeal Young makes no arguments concerning the sufficiency of the evidence regarding his intent to deprive the Bourkases of their property or his knowledge of the existence of a mortgage, both of which are also elements of the crime. See 17–A M.R.S.A. § 354(2)(D).

doubt every element of the offense charged. *See State v. Barry,* 495 A.2d 825, 826 (Me. 1985).

[¶ 10] Pursuant to section 354, intentional nondisclosure of a known encumbrance constitutes deception "whether such impediment is or is not a matter of official record." 17–A M.R.S.A. § 354(2)(D). Thus, contrary to Young's contention, the fact that Parcel # 3's mortgage was recorded in the registry of deeds did not relieve him of his statutory duty to disclose its existence.[4] Moreover, the fact that Young told Daniel Bourkas several months before the closing that the lot was encumbered did not satisfy section 354's disclosure requirement, given Young's subsequent statement to Bourkas shortly before the closing that the lot was in fact unencumbered. At the time of the closing, which is the relevant period of inquiry for the purposes of this prosecution, Bourkas had been misinformed by Young that the lot was unencumbered, and Young made no disclosure at the closing to the contrary.[5]

[¶ 11] Finally, contrary to Young's contention, attorney Jennings' discovery of the mortgage during her 1992 title search for David Aho did not relieve Young of his statutory duty to disclose the existence of the mortgage. The plain language of section 354 makes a seller responsible for disclosing his or her personal knowledge of existing liens on a property, without regard to whether the buyer may have alternative means of discovering the encumbrance. *See id.* § 354(2)(D) (intentional nondisclosure of a known encumbrance constitutes deception whether such impediment is or is not a matter of official record); *see also id.* § 354(3) (it is no defense that person deceived acted unreasonably in relying on the deception); *id.* § 354 comment (stating that subsection 3 "continues the Maine rejection of caveat emptor in these circumstances"). Jennings' discovery of the mortgage in 1992 was the result of her search of the public records, not the result of any disclosure by Young. Young's duty to disclose pursuant to section 354 existed independently of information that was obtained or that was obtainable by reference to official records, and he is not absolved of criminal liability simply because the buyers' attorney came across the mortgage during a title search performed for another party in an earlier, unrelated transaction.[6]

---

4. We reject Young's contention that a publicly recorded mortgage is not an "official record" within the meaning of section 354(2)(D).

5. Young also points out that (1) Daniel Bourkas testified that he knew the earlier prospective buyer, David Aho, had tried to assume a mortgage on Parcel # 3; (2) the Bourkases themselves tried unsuccessfully to assume a mortgage on Parcel # 3 before arranging for private financing; and (3) when the Bourkases purchased the nearby "unnumbered parcel" from Young in 1991, the Knox County Credit Union released a mortgage on that parcel by quitclaim deed. To the extent that these facts may have suggested to the Bourkases that Parcel # 3 was encumbered at the time of their 1993 purchase, however, they did not relieve Young of his independent duty to disclose the existence of the mortgage pursuant to section 354, particularly given that Young himself misinformed the Bourkases about the status of the property shortly before the closing date.

6. Young argues that it is inappropriate to criminalize a seller's intentional failure to disclose a known encumbrance, and contends that such conduct, occurring as it does in this case in the context of a private land sale transaction, must be governed by the traditional rule of caveat emptor. As is its prerogative, however, the Legislature, by enacting section 354, has determined that criminal sanctions may be appropriate when such conduct takes place *with an intention to deprive another of his property.* This legislative determination is not new, and in fact was reflected in section 354's predecessor, the former false pretenses statute. *See* 17 M.R.S.A. § 1601, *repealed by* P.L.1975, ch. 499, § 8 (effective May 1, 1976). Prior to its repeal, section 1601 read in part:

> **Cheating by false pretenses.** Whoever, designedly and by any false pretense or privy or false token and with intent to defraud, obtains from another any money, goods or other property, the making of a loan or credit, the extension of credit, the discount of an account receivable or what is represented to be an account receivable, or the making, acceptance, discount, sale or indorsement of a bill of exchange, bank check or promissory note, or his signature to any written instrument, the false making of which is forgery, *or whoever knowingly, and with intent to defraud, sells, conveys, mortgages or pledges to another personal property on which there is an existing mortgage or to which he has no title, without notice to the purchaser of such mortgage or of such want of title, is guilty of cheating by false pretenses ....*

*Id.* (emphasis added).

### III.

[¶ 12] Young next argues that reliance is an essential element of the crime of theft by deception pursuant to 17-A M.R.S.A. § 354, and that there was insufficient evidence for the jury to conclude that the Bourkases relied on his nondisclosure of the mortgage. Rather, he argues, the Bourkases relied on Jennings' defective title search in parting with their money, not on his silence at the closing. We agree that reliance is an essential component of the crime of theft by deception. We also conclude that there was sufficient evidence for the jury rationally to find such reliance beyond a reasonable doubt in this case.

[¶ 13] In defining the offense of theft by deception, section 354 provides that "[a] person is guilty of theft if he obtains or exercises control over the property of another *as a result of deception....*" See *id.* § 354(1) (emphasis added). Although section 354 does not employ the word "reliance," the statute expressly requires a causal connection between the defendant's deceptive act and the acquisition of control over another's property. That causal relationship, which may be characterized as "reliance" in this context, must exist between a victim's ceding possession or control of his property to the defendant and the defendant's act of deception.[7]

[¶ 14] To determine the nature of this required causal relationship, we look to the Maine Criminal Code's definition of causation:

> Unless otherwise provided, when causing a result is an element of a crime, causation may be found *where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently* with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient.

17-A M.R.S.A. § 33 (1983) (emphasis added).[8] Contrary to Young's contention, there is no requirement that his conduct have been the sole factor in causing the Bourkases to deliver $26,000 to him. Rather, pursuant to section 33, the causation element of theft by deception is satisfied if Young would not have obtained the money *but for* his deceptive act—that is, but for his failure to disclose the existence of the mortgage. Although Jennings' defective title search may have been a concurrent cause contributing to Young's acquisition of the Bourkases' money, this fact does not preclude a finding that Young's nondisclosure was also a causative factor

---

7. We note that most jurisdictions have interpreted their theft by deception statutes to include a requirement that the victim rely on the defendant's deceptive act. *See, e.g., King v. State,* 214 Ga.App. 311, 447 S.E.2d 645, 648 (1994) (statute requires that defendant's deceptive act or false representation have induced victim to part with his property); *State v. Saylor,* 228 Kan. 498, 618 P.2d 1166, 1168 (1980) (noting that the generally accepted rule throughout the United States is that the crime of theft by deception requires the state to prove that "the victim was actually deceived and relied in whole or in part upon the false representation"); *State v. Worden,* 115 Or. App. 376, 838 P.2d 640, 641 (1992) (theft by deception statute requires that the deceptive act have induced or caused the victims to transfer property to defendant); *Commonwealth v. Imes,* 424 Pa.Super. 633, 623 A.2d 859, 862 (1993) (statute requires that state establish reliance by victim upon defendant's false impression); *State v. Casey,* 81 Wash.App. 524, 915 P.2d 587, 589 (1996) (evolution of crime of larceny by false pretenses into theft by deception did not change its essential elements and did not eliminate element of reliance).

8. The court's instructions to the jury were in accord with section 33's definition of causation:

> [T]he statute goes on to say that this control obtained or exercised must be done as a result of deception. As a result means because of or but for the deception. When we are talking about that, it's important to bear in mind that this requires that the State prove beyond a reasonable doubt a causal relationship between the act of deception and obtaining the property. The deception must be a causative agent in bringing about the transfer of property, and that necessarily includes the substance of the concept of reliance.
>
> Now, when a defendant's conduct may have operated in conjunction with other actions, events, or conditions to cause a particular result, then to find the defendant guilty for that result the State must prove beyond a reasonable doubt: (1) that the result would not have occurred but for the defendant's conduct; and (2) the concurrent cause was not alone clearly sufficient to produce the result; and (3) the defendant's conduct was not clearly insufficient to produce the result.

within the meaning of section 33. The evidence in the record supports the jury's conclusion that, had Young disclosed the existence of the mortgage at the closing, the Bourkases would have insisted that the lien be discharged and would not have delivered to Young the full cash proceeds for an encumbered property.

The entry is:

Judgment affirmed.

